IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Daniel Eugene Sherman, #282045, | ) | C/A No. 5:10-2571-JFA-KDW |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Michael McCall, Warden, | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Daniel Eugene Sherman ("Petitioner" or "Sherman"), a state prisoner proceeding pro se, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's return and motion for summary judgment. ECF Nos. 24, 25. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 26. Petitioner filed a response in opposition to Respondent's motion. ECF No. 41. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I. Factual Background

On the morning of October 20, 2000, Daniel Eugene Sherman ("Petitioner") and his wife, Janet, both Greenville County residents, arrived at the home of Randy Craven to pay a visit to their former housemate, Tommy Simmons, whom they believed to be a police informant. App.

147-50, 144-45, 547-55, 301-02.[1]  Their vehicle, a black Isuzu Rodeo, had plastic bags covering the windows, roof, and floor. App. 157-58.  Petitioner had a sword, and his wife carried a .22 rifle. App. 152.

According to eyewitness Gregory Deane, a guest of Randy Craven and friend of Petitioner and his wife, Petitioner attacked Simmons with a sword, hitting him "about as hard as you can hit someone" and ordering Simmons to his knees. App. 150-52.  When Simmons refused to comply, Petitioner's wife stated, "[T]his is your last chance, get down." App. 152-53.  She then shot Simmons twice. App. 153-54.  Approximately 20-to-30 seconds later, Petitioner and his wife rolled Simmons' body into a blanket before loading it into their vehicle.  App. 154-56, 158.  Once Simmons' body was outside, Petitioner kicked it several times. App. 157. Petitioner and his wife lay plastic bags on the carpet of the vehicle, placed Simmons' body inside the vehicle, and transported him back to property owned by Petitioner's father. App. 157-58, 200. Before leaving, Petitioner and his wife told Deane they would kill him and his family if he told anyone. App. 158.  Petitioner and his wife burned Simmons' body for a day-and-a-half before bulldozing his remains into a pond.  App. 200-01.

On October 22, 2000, Petitioner was arrested on unrelated charges and taken into custody by Greenville County authorities. App. 76, 80.  On October 23, 2000, Dr. Richard L. Sherman, general care physician for the Greenville County Detention Center ("GCDC"), saw Petitioner and noted he had an addiction to Klonopin and Oxycontin, for which Dr. Sherman started Petitioner on a routine six-day detoxification protocol. App. 531. Dr. Sherman prescribed Phenobarbital to ease Petitioner's withdrawal symptoms. App. 531, 536.  Also on October 23,

---

[1] Citations to "App." refer to the Appendix for Writ of Certiorari as to Petitioner's claim for collateral relief in the state courts of South Carolina, which is available at ECF Nos. 25-1 through 25-6 in this habeas matter. Page number references are to the pages as numbered in the Appendix.

2000, Investigator Steve Jones, from the Anderson County Sheriff's Office, went to Greenville to question Petitioner about the murder. App. 76-77. While Jones was advising Petitioner of his rights, Petitioner invoked his right to counsel, at which time Jones and another investigator who was with him left. App. 77.

The following day, October 24, 2000, Robert K. Johnson, an investigator in the property crimes section of the Greenville County Sheriff's Office, reviewed the jail roster to see if there were any active warrants against any of the new detainees at the detention center, as was his normal practice. App. 86. Recognizing Petitioner's name on the roster, Johnson went to the GCDC to pick Petitioner up and transport him for arraignment. App. 86-88, 90. As Johnson was transporting Petitioner for arraignment, Petitioner asked Johnson if he knew what was going on. Johnson responded, "not much." Petitioner then told Johnson, "I really need to talk to somebody about this." App. 79, 81. In response, Johnson asked Petitioner, "about what," to which Petitioner replied he wanted to "talk about Tommy." App. 92-93. Johnson then told the petitioner, "I can arrange that." App. 92. Johnson testified that he then asked Petitioner what happened, and that he then "knew to take [Petitioner] up to" the violent crimes section for Greenville County Law Enforcement. App. 81.

Upon his arrival in the violent crimes section, an investigator informed Johnson the incident occurred in Anderson County and contacted Anderson County authorities. App. 81. Investigators Russell "Rusty" Garrett and Garland Major were sent to meet with Petitioner. App. 82. While awaiting the arrival of Investigators Garrett and Major, Petitioner indicated he wanted Johnson to be present when he talked to the other investigators. App. 82.

When Investigators Garrett and Major arrived, Investigator Garrett presented Petitioner with an advice-of-rights form. App. 94. As Investigator Garrett testified, he asked Petitioner his

education level, and Petitioner informed him he was a high school graduate. Investigator Garrett had Petitioner read the first two lines of the form to be sure Petitioner could read. App. 95. After confirming Petitioner could read, he read him his Miranda rights and the waiver-of-rights form. App. 95-96. Petitioner signed the waiver form, indicating he understood his rights and chose to waive those rights and to provide a statement. App. 95-96. Investigator Garland testified that he, Investigator Major, and Investigator Johnson were in plain clothes and were present when he talked with Petitioner. App. 96-97. Investigator Garland testified that Petitioner did not appear to be under the influence of drugs or alcohol, and that Petitioner's responses to questions were appropriate. App. 97-98. Petitioner made an oral statement to investigators confessing his role in Simmons' murder. App. 98-99, 198-201. Investigators Garrett and Major generated a written version of Petitioner's oral statement. After the written statement was read to Petitioner, he made and initialed some corrections and then signed the statement. App. 99-100.

Following his confession, Petitioner was indicted on February 27, 2001, for murder, criminal conspiracy, and possession of a firearm during the commission of a violent crime. App. 547-55. On February 11-13, 2002, Petitioner proceeded to trial before the Honorable J.C. "Buddy" Nicholson, Jr. Nancy Jo Thomason, Esq. represented Petitioner. Solicitor Druanne D. White represented the State. App. 1.

Prior to trial, the court conducted a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), regarding the admissibility of Petitioner's confession.[2] App. 67-128. The trial court heard testimony from Detective Jones, who discussed his meeting with Petitioner on October 23,

---

[2] In *Jackson v. Denno*, 378 U.S. 368, 376–378 (1964), the Supreme Court held that a criminal defendant has a constitutional due process right to litigate, at some stage of his criminal trial, whether his pretrial statement to law enforcement, sought to be introduced against him by the prosecution, had been voluntarily rendered and to have a fair hearing and reliable determination on that issue uninfluenced by the truth or falsity of the statement itself.

2000, after he was arrested on Greenville County charges unrelated to the murder. Jones indicated he read Petitioner his rights and explained the waiver-of-rights form, but that, before he began answering questions, Petitioner invoked his right to counsel. Jones indicated that, once Petitioner invoked that right, Jones and the other investigator left. He testified he did not try to initiate any further contact with Petitioner. App. 75-77. Detective Johnson also testified at the *Jackson v. Denno* hearing regarding his meeting with Petitioner. He testified that he did not initiate any communication with Petitioner regarding the murder charge and that Petitioner initiated communication with him by telling him he needed "to talk to somebody about this." App. 79-81. Detective Johnson said he asked Petitioner what he wanted to talk about, and Petitioner told him he wanted to talk "about Tommy." App. 92. Detective Johnson said that he then took Petitioner to the violent crimes section and that someone contacted Anderson County detectives. App. 92-93. The judge asked Detective Johnson what Petitioner told him about what had happened, and Detective Johnson indicated Petitioner told him "he had done something to Tommy." App. 93. Investigator Garrett also testified at the hearing regarding his meeting with Petitioner and about Petitioner's statement. App. 93-100. In response to questions by Petitioner's counsel, Investigator Garrett said he did not know what drugs Petitioner was taking at the time and that he did not check to find out. App. 101-02. Investigator Major also testified regarding the October 24, 2000 meeting with Petitioner, and testified that he had experience being around people under the influence of drugs and alcohol, and that Petitioner did not seem to be under the influence of drugs or alcohol on October 24, 2000. App. 102-04. Investigator Major stated that Petitioner's speech was "articulate," and that he "seemed responsive, very alert and coherent." App. 103. Investigator Major testified that he did not observe Petitioner as having red eyes, slurred speech, or balance problems. App. 103-04. Investigator Major said he was present

when Petitioner was Mirandized and that he gave his oral and written statement after he waived his Miranda rights. App. 103-04. Investigator Major testified that Petitioner did not ask for counsel or ask to remain silent during that meeting, and that no coercion, force, or threats were used against him. App. 104-06. He said that, in his opinion, Petitioner freely and voluntarily agreed to talk with them. App. 104.

Petitioner also testified at the *Jackson v. Denno* hearing. App. 106-19. He testified that, on October 22, 2000, officers from the Greenville County Sheriff's Office arrested him at his father's farm for receiving stolen motorcycles. App. 106-07. He said that he went to GCDC and saw the jail doctor, Dr. Sherman, who put him on a detox protocol. App. 107-08. Petitioner said the detox protocol involved his being given prescription medications to counteract detoxification effects from other drugs he had been taking, and he said he began taking the prescription drugs on the first day he was admitted to jail. App. 108.

Petitioner testified that, on October 23, 2000, officers from the Anderson County Sheriff's Office went to the GCDC and questioned him. Petitioner said those officers went over a rights form with him and that, after hearing his rights, he told those officers he wanted a lawyer. App. 108. Petitioner said that after he told those officers that he wanted a lawyer, they left and he was returned to his jail cell. App. 109. Petitioner said the next law enforcement officer other than jail personnel he saw was Mr. Johnson, whom he saw on October 24, 2000. *Id.* Petitioner testified that he thought Mr. Johnson had come to see him about the motorcycle. *Id.* Petitioner said Mr. Johnson instructed him to get into his car, but that, at first, he did not explain where he was taking him. *Id.* According to Petitioner, Mr. Johnson drove him to the other part of the Greenville complex and told him that "the right thing to say," was to "go ahead and get everything out in the open, about what happened." App. 109-10. In response to his counsel's

question about what Mr. Johnson meant he should talk about, Petitioner responded, "I imagine everything." App. 110. His counsel asked if he meant "everything related to these charges," and Petitioner responded in the affirmative. *Id.* Petitioner said that, as he remembered it, Mr. Johnson was the one who initiated the conversation about getting things out in the open. *Id.* Petitioner said Mr. Johnson indicated that, if he agreed and spoke with them to tell them everything that happened, it would be like "clearing [him]self, you know, making everything all right." *Id.* Petitioner reiterated that it was Mr. Johnson who brought up the fact that he needed to talk with someone. App. 111. Petitioner said that one of the officers (Johnson, Garland, or Garrett) told him it was "save your own ass day." App. 110.

In response to questions from his counsel, Petitioner said he had asked for a lawyer on October 23 because he knew he "needed some counsel on what was going on." App. 111. When asked why he talked with the officers the following day without having obtained counsel, Petitioner said he did so because the officers told him it was the right thing. *Id.* He said he felt like he was doing the right thing by "agreeing with what they were saying, a lot of things that we talked about." *Id.* He said he did not know he was putting himself in jeopardy. *Id.* Petitioner testified that, "as far as [he could] remember," after the time on October 23, 2000 that he requested a lawyer, he did not initiate a conversation with Mr. Johnson or anyone else by telling them that he wanted to "talk to somebody about this." App. 111-12.

Petitioner stated that the jail doctor had put him on phenobarbital to detox him from the Lortab he had been taking. App. 112. He said he was taking it at the time he spoke with the officers on October 24, 2000. *Id.* When asked how the phenobarbital made him feel, Petitioner responded: "I couldn't tell. I felt so bad coming off the pain medicine. It just makes you kind of

like drunk a little bit maybe." *Id.* Petitioner said the medication made him have problems remembering and that he was sick and was very tired. App. 112-13.

On cross-examination by the solicitor, Petitioner said he was "fairly sure" that Mr. Johnson had initiated the contact for him to speak with investigators. App. 114. He said he was not positive who initiated the contact, but that he did not see "why [he] would have got [himself] to write all that stuff up about [himself]." App. 115.

At the conclusion of the hearing, the trial court found: (1) Detective Johnson's testimony that Petitioner had initiated the discussion on October 24, 2000 was credible; (2) Petitioner's testimony that, "as far as [he could] remember," the detective initiated the October 24, 2000 discussion was not credible; (3) Petitioner's oral and written statements were freely and voluntarily given; and (4) Petitioner failed to prove the effects of phenobarbital rendered his confession involuntary. App. 127-28. The court found Petitioner's oral and written statements would be admissible at trial. App. 128. Shortly thereafter, a competency evaluation was presented to the court that found Petitioner was competent to stand trial. App. 129-30.

At trial, the State presented testimony of eyewitness Gregory Deane regarding details of the crime. App. 144-85. Investigators Johnson and Major testified for the State regarding Petitioner's state of mind at the time of the confession. App. 188-95. Investigator Major read Petitioner's written statement into the record. App. 198-201.

To corroborate Deane's testimony and Petitioner's statement, the State elicited testimony from a variety of witnesses to show the following: (1) blood was found at the crime scene (App. 207); (2) there was evidence the rifle was melted with a blowtorch (App. 205-10); (3) pieces of the rifle and the sword were found around the crime scene (App. 209-11); and (4) the sword was also melted with a blowtorch (App. 213). The State also obtained testimony from Deputy Brian

Cooley who observed a burnt area near the ponds referenced by Deane and by Petitioner. App. 217. Cooley's testimony also revealed that bone fragments were found in one of the ponds on the property of Petitioner's father. App. 235-37. The State also presented testimony from John Ortuno, an agent with the South Carolina Law Enforcement Division ("SLED") who has an expertise in DNA analysis. App. 243-44. Agent Ortuno explained that no DNA was extracted from the bone fragments, opining this was likely because the fire would have destroyed any materials such as bone marrow that could have provided a DNA sample. App. 245. The State also introduced the stipulated testimony of firearms expert David Collins, who found items in a trial exhibit were consistent with being pieces of a .22 rifle. App. 248.

Following the close of the State's case, the defense moved for a directed verdict, which the trial court denied. App. 251. The defense rested and attorneys for the State and for Petitioner gave closing arguments. App. 257-81. The court charged the jury on the law, and the jury returned a verdict. App. 281-99. Petitioner was found guilty on all charges. App. 300-02. He was sentenced to life on the murder charge, five years for the criminal conspiracy charge and five years on the firearm charge, all to be served consecutively. App. 308-09.

II. Procedural History

On February 22, 2002, Petitioner timely noticed his direct appeal in the South Carolina Court of Appeals. *See* Notice of Appeal in #2001-GS-04-0577, #2001-GS-04-0578, #2001-GS-04-0579; ECF No. 25-7. Subsequently, his appellate counsel, Ronnie M. Cole, filed a brief pursuant to *Anders v. California*, 388 U.S. 924 (1967), arguing the trial court abused its discretion by ruling that Petitioner's statement was freely and voluntarily given based upon a totality of the circumstances. *See Anders* Brief in #2001-GS-04-0577, #2001-GS-04-0578, #2001-GS-04-0579; ECF No. 25-8. Petitioner did not file a pro se brief. On April 19, 2004, the

Court of Appeals dismissed the claim, and the remittitur was issued on May 21, 2004. *See State v. Sherman*, #2004-UP-0259; Remittitur in #2001-GS-04-0577, #2001-GS-04-0578, #2001-GS-04-0579; ECF Nos. 25-9, 25-10.

On April 5, 2005, Petitioner filed an application for post-conviction relief ("PCR") alleging ineffective assistance of counsel based on the following:

1. [Counsel] failed to object to a jury panel of twelve members that was selected from a contaminated jury pool;
2. [Counsel] failed to make a motion for mistrial, due to contamination of jury;
3. [Counsel] failed to make a motion for a change of venue, due to highly publicized prejudicial pretrial publicity;
4. [Counsel] failed to object to the trial benches "hands of one, is the hand of all" instruction;
5. [Counsel's] failure to object to the state prosecution, burden shifting, closing argument, based on unrelated elements of kidnapping;
6. [Counsel's] failing to object to the trial courts unconstitutional shifting of the burden of proof from the states prosecution to the defendant, concerning the malice charges given to the contaminated jury panel;
7. [Counsel] failed to make a motion to suppress Gregory Deans' testimony obtained in violation of 18 USC ( c )(12);
8. [Counsel] failed to request a cautionary instruction to Gregory Deans' non-self inculpatory trial testimony after trial counsel's untimely objection to the admission of Ms. Janet Sherman's non-self inculpatory statement through Mr. Gregory Deans' non-self inculpatory trial testimony under Rule 801 (c) SCRE.

App. 311-18.

In its Return, the State denied Petitioner's allegations and requested an evidentiary hearing on the matter. App. 396-99. On July 18, 2008, collateral counsel filed a supplemental memorandum contending trial counsel, as it related to the *Jackson v. Denno* hearing, failed to subject the State's case to meaningful adversarial testing under *U.S. v. Cronic*, 466 U.S. 648 (1984), alleging the following:

1. Counsel did not subject to any meaningful adversarial testing the issue of whether Mr. Sherman freely, voluntarily, and knowingly waived his right to counsel because she:

    a. Failed to make even the most minimal investigation of the facts of the Phenobarbital detoxification protocol administered by Mr. Sherman;

    b. Failed to object to lay opinion testimony on whether Mr. Sherman was or appeared to be under the influence of drugs or alcohol at the time he gave the statements;

    c. Failed to present any medical records or medical testimony of any kind, even though she was arguing that "Mr. Sherman could not make a free, voluntary, and knowing waiver of his rights because he was taking 'heavy duty narcotics.'"

*See* Suppl. Mem. in Supp. of Pet. for PCR in #2005-CP-04-0908; ECF No. 25-11 at 4-5.

Additionally, the memorandum included the following ineffective assistance of counsel claims:

2. Counsel failed to attend or obtain the transcript of the trial of Mrs. Sherman, the sole alleged co-conspirator, even though the trial took place only 0.6 miles away, was tried by the same Solicitor, concerned the same charges, involved the same alleged facts, included 9 of the same witnesses (including the purported eye-witness) who later also testified against Mr. Sherman, and utilized the same trial exhibits;

3. Counsel failed to cross-examine the sole purported eyewitness on the most significant motivation he had to lie—the fact that Mrs. Sherman had recently ended her affair with him and returned to Mr. Sherman;

4. Counsel failed to request jury charges on the lesser-included offense of voluntary manslaughter or on self -defense, and did not state any exception to the lack thereof.

*See* Supp. Mem. in Supp. of Pet. for PCR in #2005-CP-04-0908; ECF No. 25-11 at 4-5.

On July 22, 2008, the Honorable R. Knox McMahon conducted an evidentiary hearing on Petitioner's PCR application. App. 400. Mary C. McCormac, Esquire represented Petitioner and Assistant Attorney General Daniel E. Grigg represented the State. App. 400. Petitioner's trial counsel, Ms. Thomason, testified at the hearing, and the PCR record included the records of the Anderson County Clerk of Court, the transcript of the trial proceedings against Petitioner, his records from the South Carolina Department of Corrections, and his records on appeal. *See* App. 540.

In a November 10, 2008 order, the PCR court denied and dismissed Petitioner's application for PCR. App. 540-46. Following the hearing, the PCR court issued an order stating as follows:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witness presented at the hearing, closely pass upon her credibility and weigh her testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. 17-27-80 (1985).
>
> Ms. Thomason testified that she was appointed to represent Applicant at his trial. She testified that she began representing Applicant in 2001. Ms. Thomason testified that Applicant had a history of drug use. Ms. Thomason testified that she did not recall specifically, but would not dispute that Applicant was subjected to a detoxification program while incarcerated. She testified that she did not recall the name of the doctor(s) who treated Applicant at the Greenville County Detention Center. She stated that she did not subpoena the doctors or the medical records in preparation for Applicant's trial. Ms. Thomason testified that she met with her client on numerous occasions, discussed the facts of the case with Applicant, requested and received discovery, discussed discovery with Applicant, and investigated the case. She testified that she filed a *Jackson v. Denno* motion, which was denied. Ms. Thomason testified that she also made a motion regarding Applicant's Miranda rights.
>
> Ms. Thomason testified that she discussed with her client the idea of "hand of one, hand of all". She stated that she did advise him of his constitutional rights. Ms. Thomason testified that the facts of the case, as revealed by her investigation, were that Applicant and his wife went to the victim's house, attacked him with a sword, and shot him. She testified that Applicant and his wife then burned the victim's body.
>
> Ms. Thomason testified that Applicant's wife was charged as a co-conspirator in this case. Ms. Thomason stated that the wife was tried in Anderson County before Applicant was tried. She testified that she did not attend the wife's trial, nor did she obtain a copy of the transcript from the wife's trial. Ms. Thomason testified that her office is approximately half a mile away from the Anderson County Courthouse.
>
> Ms. Thomason testified that she discussed the statements of witnesses involved in this case with her client. She testified that Applicant told her his version of the facts. Ms. Thomason testified that she met with the solicitor on several occasions. Ms. Thomason testified that this case did not involve DNA or fingerprint evidence. She stated that the solicitor's case was largely based on circumstantial evidence. Ms. Thomason testified, that even though it was circumstantial, the evidence against Applicant was overwhelming.
>
> Ms. Thomason testified that she did not think that the argument that Applicant was heavily into drugs would have been successful as a defense at trial.

She stated that this was the reason she decided not to subpoena the doctors or the medical records from the Greenville County Detention Center. She did testify that she tried to use his drug use to keep his statements to police from being entered at trial. Ms. Thomason, in fact, made a motion to keep out Applicant's statements. She stated that she was not successful. Ms. Thomason testified that she did not feel that expert testimony or medical records would have benefited Applicant such that the outcome of his trial would have been different.

Ms. Thomason testified that this case never involved a search and seizure issue. She stated that Applicant did not have standing to challenge the search and seizure conducted by police. Furthermore, she testified that Applicant's case did not hinge on the search and seizure. She testified that Applicant was advised of his right to testify and chose to remain silent. She testified that she attacked the credibility of the State's witnesses on cross- examination.

In a post-conviction relief action, Applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; *Butler v. State*, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); *Butler, Id.*

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Butler, Id.* Applicant must overcome this presumption to receive relief. *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989).

Courts use a two-pronged test in evaluating allegations of ineffective assistance of counsel. First, Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." *Cherry*, 300 S.C. at 117, 385 S.E.2d at 625, *citing Strickland*. Second, counsel's deficient performance must have prejudiced Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cherry*, 300 S.C. at 117-18, 386 S.E.2d at 625. As discussed above, Applicant has failed to carry his burden in this action. Therefore, this Court finds that the application must be denied and dismissed.

This Court finds that Applicant's claim that Ms. Thomason was ineffective in her representation of him at trial is without merit. Ms. Thomason testified before this Court and is found to be a credible witness. It is clear from her testimony that Ms. Thomason was prepared to go to trial in this matter. She met with her client on numerous occasions. She met with the solicitor and she investigated the case. As part of her investigation Ms. Thomason requested and obtained discovery, she reviewed that discovery with her client, discussed Applicant's version of the facts with him, and she researched the legal issues in the case.

This Court finds that Ms. Thomason developed reasonable trial strategy and presented a valid defense on Applicant's behalf. Ms. Thomason acknowledged that the State's case was largely circumstantial. She also stated that the evidence was overwhelmingly against her client. Ms. Thomason made motions to exclude Applicant's statements and argued that he had invoked his Miranda rights, and that he was heavily into drugs and did not know what he was doing. She was unsuccessful in her efforts. Ms. Thomason was reasonable in her belief that the outcome of these motions and the trial itself would not have been different had she subpoenaed the doctors and medical records from the Greenville County Detention Center.

It is clear from her testimony that Applicant was informed of his constitutional rights, including his right to testify. Applicant made the decision to remain silent. This Court further finds that Applicant was fully apprised of the concept of "hand of one, hand of all". This Court does not find that counsel was ineffective for not sitting in on, or obtaining the transcript from, the co-conspirator's trial. There is no reason to believe that counsel would have gained any information or knowledge of the case that would have been beneficial to her client.

This Court agrees with counsel that the statements provided by various witnesses significantly hurt Applicant. This Court does not find that counsel could have done anything more to keep out the witnesses' statements or Applicant's statements. This Court agrees that the search and seizure was not an issue in this case. Ms. Thomason provided sufficient explanation as to why she did not raise it. Likewise, she provided sufficient explanation as to her trial strategy and the defense she set forth.

Finally, this Court finds that, even if a deficiency could be found in Ms. Thomason's representation, Applicant has failed to carry his burden in showing that counsel's representation prejudiced him such that "but for" her deficiency the outcome of his trial would have been different.

App. 540-46. Petitioner did not file a Rule 59(e), SCRCP, motion to alter or amend the PCR court's order.

Following the dismissal of his application for PCR, Petitioner timely filed a Notice of Appeal. *See* Notice of Appeal in #2005-CP-04-0908; ECF No. 25-12. Thereafter, Petitioner filed a Petition for Writ of Certiorari arguing "trial counsel erred in failing to present at the suppression hearing, evidence of the petitioner's narcotic intoxicated state at the time of his custodial interrogation because this evidence would have established that his statement was not given voluntarily and intelligently." *See* Pet. for Writ of Cert. in #2005-CP-04 0908; ECF No.

25-13. The State filed it Return to Petition for Writ of Certiorari on November 2, 2009. *See* Ret. to Pet. for Writ of Cert. in #2005-CP-04-0908; ECF No. 25-14. On June 10, 2010, the Supreme Court of South Carolina denied certiorari. *See* Order of S.C. Sup. Ct. in #2005-CP-04-0908; ECF No. 25-15. The remittitur was issued on June 29, 2010. *See* Remittitur in #2005-CP-04-0908; ECF No. 25-16.

III.    Discussion

A.    Federal Habeas Issues

In the federal habeas petition now before this court, Petitioner contends he is entitled to relief based upon the following grounds, which are quoted verbatim from his Petition:

> Ground One: ineffective or incompetent counsel;
> Supporting Facts: ct. at. Case No. # 05-CP-04-0908, Supplemental Memorandum in Support of Petition for Post-Conviction Relief [the referenced memorandum was filed by Petitioner's PCR counsel and is available at ECF No. 25-11];
>
> Ground Two: violation of constitutional rights under Sixth Amendment and Fourteenth Amendment;
> Supporting Facts: Violation of Miranda Rights ct. al. Supplemental Memorandum for PCR Case No. # 05-CP-04-0908, [available at ECF No. 25-11];
>
> Ground Three: violation of due process of law;
> Supporting Facts: See Appendix ONE of Two, p. 322-324 [which is a portion of his argument regarding trial counsel's failure to move for a mistrial or a change of venue because of alleged jury-pool contamination, found in the Supplemental Post Conviction Relief Amendment, which Petitioner filed pro se];
>
> and
>
> Ground Four:  Petitioner states he is being held elegility [sic] and agenst [sic] his will on all charges;
> Supporting Facts: Miranda rights violated under Constitutional Sixth Amendment Rights.

Pet. 5-10 ([sic] notations and misspellings in original).

B.      Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

Courts afford deference under to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). Recently, the Supreme Court provided further guidance regarding the deference due to state court decisions. *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786–87. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786. In *Harrington*, the Court stated: "If this

standard is difficult to meet, that is because it was meant to be." *Id., see Richardson v. Branker*,

__ F.3d __, Nos. 11-1, 11-2, 2012 WL 3262038 (4th Cir. Feb. 6, 2012) (quoting *Harrington*

extensively and reversing district court's grant of writ based on his ineffective assistance of

counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal

determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal habeas court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (emphases in original). "Clearly established

Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme]

Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549

U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court

decision is "contrary to" clearly established federal law, the federal court may not grant relief

unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a

legal question, the state court decided the case differently than the Court has on facts that are

materially indistinguishable, or if the state court "identifie[d] the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the

facts of the prisoner's case." *Williams,* 529 U.S. 362, 405-13. The "unreasonable application"

portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or

erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v.*

*Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.      Ineffective Assistance of Counsel Claims

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The Supreme Court's recent 2011 decisions elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 131 S. Ct at 788 (internal quotation marks omitted); *Cullen v. Pinholster*, 131 S. Ct. at 1403.

Further, in *Cullen*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. Below, the district court had conducted an evidentiary hearing and considered new evidence in considering and granting petitioner's writ based on ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The Court granted certiorari

and reversed, finding the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose. 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises an ineffective assistance of counsel claim in a § 2254 habeas petition that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

2.      Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
   (A)    the applicant has exhausted the remedies available in the courts of the State; or
   (B)    (i) there is an absence of available State corrective process; or
           (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
   (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
   (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-

27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[3] Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as

---

[3] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar. In this case, the PCR court filed its order dismissing Petitioner's PCR Application on November 10, 2008, over a year after the *Marlar* decision.

such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from

considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Cause entails a showing "that some objective factor external to the defense impeded" efforts to comply with the state procedural rule. *Coleman*, 501 U.S. at 753.

Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He must prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982) (finding habeas petitioner could not demonstrate actual prejudice by demonstrating that errors at trial "created a *possibility* of prejudice," rather he was required to

show that at trial "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimension.") (emphasis in original).

The narrow fundamental miscarriage of justice exception, on the other hand, encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. *Murray*, 477 U.S. at 496. To prevail under an "actual innocence" theory, the petitioner must produce new evidence that was not available at trial to show his factual innocence. *Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999). Further, the petitioner must "demonstrate actual factual innocence of the offense or conviction; i.e., that petitioner did not commit the crime of which he was convicted." *United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). To meet this standard, a petitioner must establish that the errors of which he complains probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.*

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), the Fourth Circuit stated that, once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion that follows is only dicta. *See Karsten v. Kaiser Found. Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

III. Analysis

A.    Procedurally Barred Grounds

1.   The Parties' Positions

Respondent contends that portions of Petitioner's Ground One (regarding effectiveness of counsel) and all of Petitioner's Ground Three (regarding due process) are procedurally barred to the extent they were not raised or preserved in state court. Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165-66 (1996). It is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt,* 66 F.3d 1350 (4th Cir. 1995).  Having reviewed the record evidence and the parties' legal memoranda, the undersigned agrees with Respondent.

In Ground One, Petitioner claims he had "ineffective or incompetent counsel," citing to his Supplemental Memorandum in Support of Petition for PCR as the supporting facts. ECF No. 1 at 5.  Specifically, that supplemental memorandum included the following claims that counsel was ineffective:

1.   Counsel did not subject to any meaningful adversarial testing the issue of whether Mr. Sherman freely, voluntarily, and knowingly waived his right to counsel because she:
     a.   Failed to make even the most minimal investigation of the facts of the Phenobarbital detoxification protocol administered by Mr. Sherman;
     b.   Failed to object to lay opinion testimony on whether Mr. Sherman was or appeared to be under the influence of drugs or alcohol at the time he gave the statements;
     c.   Failed to present any medical records or medical testimony of any kind, even though she was arguing that "Mr. Sherman could not make a free, voluntary, and knowing waiver of his rights because he was taking 'heavy duty narcotics.'"
2.   Counsel failed to attend or obtain the transcript of the trial of Mrs. Sherman, the sole alleged co-conspirator, even though the trial took place only 0.6 miles away, was tried by the same Solicitor, concerned the same charges, involved the same alleged facts, included 9 of the same witnesses (including the

purported eye-witness) who later also testified against Mr. Sherman, and utilized the same trial exhibits;

3. Counsel failed to cross-examine the sole purported eyewitness on the most significant motivation he had to lie—the fact that Mrs. Sherman had recently ended her affair with him and returned to Mr. Sherman;

4. Counsel failed to request jury charges on the lesser-included offense of voluntary manslaughter or on self-defense, and did not state any exception to the lack thereof.

ECF No. 25-11 at 4-5. Respondent agrees that Petitioner actually exhausted all remedies as to Issue 1, subparts (a), (b), and (c), by presenting those issues to the PCR court and to the Supreme Court of South Carolina on appeal. Respondent aptly characterizes these issues as relating to whether Petitioner's trial counsel subjected the State's case to meaningful adversarial testing in the *Jackson v. Denno* hearing, were actually exhausted because they were presented to the PCR court and to the Supreme Court of South Carolina. ECF No. 25 at 15-16 & n.6.

In responding to the motion for summary judgment, Petitioner includes argument regarding what he terms as "Issue 5" under Ground One: "Trial Counsel failed to object to the State Prosecution's burden shifting closing argument based on unrelated elements of kidnapping." ECF No. 41 at 32.[4] The undersigned notes that Petitioner raised that as a ground of counsel's ineffective representation in his initial state court PCR application (App. 314) and his pro se "Supplemental Post Conviction Relief Amendment" memorandum (ECF No. 25-4 at 11-15). However, having reviewed the record, the undersigned finds that Petitioner did not specifically include this issue in his federal habeas petition. Nonetheless, Petitioner did attach a list of "Claims and Issues for Relief" that refers to him as "Applicant" and includes as an issue

---

[4] Petitioner also discusses what he labels as "Issue 6" under Ground One's ineffective assistance claims: "Counsel failed to object to a jury panel that was selected from a contaminated jury pool." "Violation of due process of law." *Id.* at 34. Petitioner notes that this issue regarding how his trial counsel was ineffective is the same as his Ground Three in the instant habeas petition. *Id.* Respondent discusses this issue in relation to Ground Three, arguing it is procedurally barred. ECF No. 20, 21.

that his trial counsel "[f]ailed to object to trial solicitor's improper, unsupported, false, and burden shifting closing argument concerning an unrelated element of kidnapping." ECF No. 1-1. Although Petitioner does not seem to refer to this one-page attachment anywhere in his federal habeas petition, and he did not properly exhaust it below, the court will consider it on its merits because Respondent did not expressly claim it was barred.

Respondent also agrees that Petitioner's Ground Two (regarding alleged violation of his Sixth and Fourteenth Amendment rights based on the voluntariness of his statements) and Ground Four (regarding his being held illegally because his Miranda rights were violated)[5] were actually exhausted at the PCR- and state-supreme-court-levels and should be considered on their merits. ECF No. 25 at 16-17.

Respondent argues that Petitioner's remaining habeas claims—portions of his ineffective assistance of counsel claims in Ground One and all of Ground Three are procedurally barred because they were not raised, or were not raised properly, below. ECF No. 25 at 19-21. More specifically, Respondent argues that the following claims are barred:

**Portions of Ground One**: Petitioner's ineffective assistance of counsel claims in Ground One that are not related to the *Jackson v. Denno* hearing—specifically, issues 2, 3, and 4 raised by Petitioner through his PCR counsel (*see* ECF No. 25-11 at 4-5, 13-19):

4. Counsel failed to attend or obtain the transcript of the trial of Mrs. Sherman, the sole alleged co-conspirator even though the trial took place only 0.6 miles away, was tried by the same solicitor, concerned the same charges, involved the same alleged facts, included 9 of the same witnesses (including the purported eye-witness) who later also testified against Mr. Sherman, and utilized the same trial exhibits;
5. Counsel failed to cross-examine the sole purported eye-witness on the most significant motivation he had to lie – the fact that Mrs. Sherman had recently ended her affair with him and returned to Mr. Sherman;

---

[5] In his memorandum opposing Respondent's motion, Petitioner indicates that "Ground Two [was] actually meant to be Ground Four." ECF No. 41 at 31. For purposes of this discussion, the court refers to the grounds for relief as numbered in Petitioner's Petition (ECF No. 1).

6. Counsel failed to request jury charges on the lesser-included offense of voluntary manslaughter or on self defense, and did not state any exception to the lack thereof;

and

**Ground Three**: Petitioner's Ground Three claim for "violation of due process of law," which Respondent characterizes as Petitioner's prior ineffective assistance of counsel claims "recast[] as direct appeal, due process claims." ECF No. 25 at 20. Respondent argues that, as such, those claims were not preserved for appellate review at the criminal trial. *Id.* at 20. To the extent Petitioner is reasserting these points as additional ineffective assistance of counsel allegations, Respondent argues that Petitioner's claims are barred because, although including those claims in his PCR Application, Petitioner presented no evidence to the PCR court on these issues and did not file a motion pursuant to Rule 59(e), SCRCP, when the PCR court's order of dismissal did not address them. *Id.* at 20.

Respondent argues that these grounds are procedurally barred from review in this habeas proceeding because they were not properly raised and preserved below. Further, Respondent submits Petitioner has not alleged cause for his failure to present and adequately exhaust all issues below. According to Respondent, Petitioner has not demonstrated prejudice, nor has he presented argument and evidence to show a miscarriage of justice, which would require a showing of actual innocence. ECF No. 25 at 22 (citing *Coleman*, 501 U.S. at 750-51; *Bousley*, 523 U.S. at 622).

Petitioner does not generally dispute Respondent's characterization of the procedural history of his ineffective assistance of counsel grounds and which ones were or were not presented in South Carolina courts. He argues, however, that application of strict state procedural rules cause him a loss of "'fundamental fairness' and meaningful 'due process[.]'"

ECF No. 41 at 2. He submits that cause and prejudice exist that are sufficient for the court to excuse the procedural defaults, however. ECF No. 41 at 2-10. [6]

In support of his cause-and-prejudice argument, Petitioner claims, among other things, that his trial counsel "sandbagged" him and that his appointed PCR counsel abandoned issues he had raised in his pro se PCR filings without discussing the issues with him. ECF No. 41 at 7. He also submits that his PCR counsel's failure to preserve issues by not discussing them at the PCR hearing, not filing a motion to alter or amend pursuant to Rule 59(e), SCRCP, and/or not appealing all issues provided sufficient "cause" for his default on preserving some claims. ECF No. 41 at 6-10. He claims his PCR counsel did not consult with him prior to abandoning some of the issues he raised in his pro se PCR application. He submits that South Carolina's court rules disallowing hybrid representation[7] prevented him from submitting his own filings that could have "intervene[d] and/or correct[ed] his state appointed attorneys' waiver and abandonment of issues that were properly raise[d] and presented[.]" ECF No. 41 at 7.

Apparently aware that the law does not generally provide a PCR applicant the constitutional right to counsel, Petitioner fashions an argument that, in his situation, he can present the requisite cause and prejudice to excuse his procedural defaults because he was entitled to, but did not receive effective representation by his PCR counsel. ECF No. 41 at 8-9. He submits that, in South Carolina, constitutional challenges to his representation at trial may

---

[6] Petitioner focuses his argument on establishing cause and prejudice as to the ineffective assistance of counsel claims Respondent argues are procedurally barred. He does not present argument that he can demonstrate cause and prejudice as to Ground Three, which Respondent also argues is procedurally barred.

[7] Hybrid representation is "representation which is partially pro se and partially by counsel." *State v. Stuckey*, 508 S.E.2d 564, 564 (S.C. 1998). In *Stuckey*, South Carolina's highest court noted that, by implication, the United States Supreme Court had determined there was "no Sixth Amendment right to hybrid representation." *Id.*

only be raised for the first time through PCR. ECF No. 41 at 6 (*citing Kornahrens*, 66 F.3d at 1361-62). Petitioner then correctly notes that *Douglas v. California*, 372 U.S. 372, 356-57 (1963), provides all criminal defendants the constitutional right to effective counsel at trial and in their first "appeal of right," as well as *Strickland*'s requirement that such defendants have such counsel provide "effective assistance." ECF No. 41 at 9 (citing *Douglas*, 372 U.S. at 356-57; *Strickland*, 466 U.S. at 684-87)). Combining those points, Petitioner argues he had a constitutional right to effective representation by counsel in his state PCR proceedings because, in effect, that proceeding was his first "appeal of right" in which he could challenge trial counsel's effectiveness. He argues that when that right attached, he became entitled to have that counsel provide "effective assistance." ECF No. 41 at 8-9. Because he purportedly did not receive effective representation by his PCR counsel, Petitioner argues he has established the cause required to overcome the procedural bar.

### 2. Petitioner Has Not Overcome the Procedural Bar

#### a. Petitioner Cannot Demonstrate Cause and Prejudice Based on His PCR Counsel's Allegedly Ineffective Assistance

The court disagrees with Petitioner's argument and recommends finding that he has not established cause and prejudice sufficient to excuse the procedural defaults as to portions of Ground One and all of Ground Three. As an initial matter, to the extent Petitioner is raising the allegedly ineffective assistance of his PCR counsel as a ground for habeas relief, 28 U.S.C. § 2254 plainly does not permit such a ground. 28 U.S.C. § 2254(i) (providing "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). As the court noted in *Long v. Ozmint*, 558 F. Supp. 2d 624 (D.S.C. 2008), 28 U.S.C. § 2254(i) is a codification of the long-standing principles that "constitutional errors in a state post-conviction

31

case are not grounds for federal habeas corpus relief." 558 F. Supp. 2d at 629-30 (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988), which collects cases holding that errors in state PCR proceedings "cannot serve as a basis for federal habeas corpus relief").).

Nor can Petitioner use his argument about his PCR counsel's claimed ineffectiveness to show sufficient cause to excuse procedural defaults and bar. In *Mackall v. Angelone*, 131 F.3d 442, 446-49 (4th Cir. 1997) (en banc), the Fourth Circuit rejected a claim similar to Petitioner's, finding the habeas petitioner could not demonstrate cause and prejudice to excuse procedural default based on PCR counsel's representation because the Constitution does not provide a right to counsel in collateral proceedings. The en banc *Mackall* court noted that, in *Finley*, 481 U.S. at 555, the Court acknowledged the constitutional right to counsel on direct appeal that was first discussed in *Douglas v. California* and protected by *Anders v. California,* 386 U.S. 738 (1967). The court found that a similar right did not extend to collateral proceedings. 131 F.3d at 447. The court noted that *Coleman* permitted a federal petitioner's default be excused for "cause" based on counsel's ineffectiveness "only if [the ineffectiveness] is an independent constitutional violation[, and] *Finley* and *[Murray v.] Giarratano*, [492 U.S. 1 (1989)] established that there is no right to counsel in state collateral proceedings.'" 131 F.3d at 448 (quoting *Coleman*, 501 U.S. at 755); *id.* ("[I]n order to constitute cause, attorney error must amount to constitutionally ineffective assistance of counsel and . . . this standard c[an] not be satisfied in the absence of a constitutional right to counsel.").

Similar to Petitioner's argument, petitioner Mackall submitted that, because he could raise constitutional challenges as to the effectiveness of his trial or appellate counsel during his direct appeal, the state collateral attack was his first opportunity to raise such constitutional

challenges and, as such, the state collateral attack amounted to being his "one and only appeal of right in which a right to counsel was held to exist in *Douglas.*" 131 F.3d at 449. Mackall argued that he had a constitutional right to counsel in the first state collateral attack so that he could raise claims of "constitutional ineffective assistance of trial and appellate counsel that he could not raise on direct appeal." *Id.* The Fourth Circuit rejected Mackall's argument, finding that *Finley* plainly held no constitutional right to counsel exists on collateral review. *Id.* "Because [petitioner] has no right to effective assistance of counsel in his state habeas proceedings, he cannot demonstrate cause to excuse the procedural default of his claims that his trial and appellate counsel were constitutionally ineffective. Consequently, federal habeas review of those claims is barred." *Id.*

Based on § 2254, the analysis of the *Mackall* court, and other applicable law, the undersigned finds Petitioner cannot establish the requisite cause and prejudice to excuse procedural defaults, nor may he obtain habeas relief based on a ground that his PCR counsel was ineffective. *See also Caldwell v. Padula*, C/A No. 6:10-2886-RBH, 2011 WL 4388304, at *9 (finding petitioner's allegations of ineffective representation by his PCR counsel did not establish cause to overcome procedural default); *Bannister v. South Carolina,* C/A No. 3:08-2402-GRA, 2009 WL 2601566 at *2, 7 (D.S.C. Aug. 21, 2009) (finding habeas petitioner's claims that his PCR counsel was ineffective did not entitle him to habeas relief, nor did they establish cause for procedural default on claims raised in habeas petition).

Because Petitioner has not demonstrated cause for the procedural defaults, the court need not consider whether he was prejudiced for purposes of the cause and prejudice analysis of *Coleman*. *Turner*, 58 F.3d at 931 ("Because [petitioner] cannot establish cause, we do not consider whether he can show actual prejudice.").

b. Petitioner Has Not Shown He Is "Actually Innocent."

Further, Petitioner has not established "actual innocence" that would satisfy the "narrow fundamental miscarriage of justice exception." *Murray*, 477 U.S. at 496. Here, Petitioner confessed to his involvement in the murder of Mr. Simmons and the disposal of his body. His confession was corroborated at trial by the testimony of an eyewitness and by physical evidence, including fragments of the gun and sword used in commission of the murder. *See* App.198-201, 205-13.

Accordingly, the undersigned agrees with Respondent that Petitioner is procedurally barred from raising portions of his Ground One, Issues 2, 3, and 4 claims (ineffective assistance of counsel claims not related to the *Jackson v. Denno* hearing) and all of his Ground Three claims ("due process" claims regarding trial counsel's failure to object, move for mistrial, or move to change venue based on the purportedly tainted jury pool). In *Kornahrens*, the Fourth Circuit Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. 66 F.3d 1350, 1359. The court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion that follows is dicta. *See Karsten v. Kaiser Found. Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Accordingly, the undersigned will not discuss the merits of the claims raised in Ground Three or the portions of Ground One not related to the *Jackson v. Denno* hearing as these claims are procedurally barred. Therefore, it is recommended that Respondent's motion for summary judgment be granted as to these grounds.

IV. Merits Analysis

A. Ground One: Petitioner's Ineffective Assistance of Trial Counsel

a. As to Claims Related to the *Jackson v. Denno* Hearing

The court considers the merits of the following of Petitioner's ineffective assistance

claims raised in Ground One:

> (1) Counsel did not subject to any meaningful adversarial testing, the issue of whether Mr. Sherman freely, voluntarily, and knowingly waived his right to counsel because she:
>     a. [Counsel] [f]ailed to make even the most minimal investigation of the facts of the Phenobarbital detoxification protocol administered by Mr. Sherman
>     b. [Counsel] failed to object to lay opinion testimony on whether Mr. Sherman was or appeared to be under the influence of drugs or alcohol at the time he gave the statements.
>     c. [Counsel] failed to present any medical records or medical testimony of any kind, even though she was arguing that "Mr. Sherman could not make a free, voluntary, and knowing waiver of his rights because he was taking "heavy duty narcotics."

*See* ECF No. 1 at 5 (referring to Suppl. Mem. in Supp. of Pet. for PCR, ECF No. 25-11 at 4-13).[8]

In addressing Petitioner's claims that his trial counsel, Nancy Jo Thomason, Esq., was

ineffective, the PCR court found:

> This Court finds that Applicant's claim that Ms. Thomason was ineffective in her representation of him at trial is without merit. Ms. Thomason testified before this Court and is found to be a credible witness. It is clear from her testimony that Ms. Thomason was prepared to go to trial in this matter. She met with her client on numerous occasions. She met with the solicitor and she investigated the case. As part of her investigation Ms. Thomason requested and obtained discovery, she reviewed that discovery with her client, discussed Applicant's version of the facts with him, and she researched the legal issues in the case.
>
> This Court finds that Ms. Thomason developed reasonable trial strategy and presented a valid defense on Applicant's behalf. Ms. Thomason acknowledged that the State's case was largely circumstantial. She also stated that the evidence was overwhelmingly against her client. Ms. Thomason made

---

[8] As discussed fully above, Petitioner's other allegations of counsels' ineffectiveness raised in his PCR counsel's supplemental memorandum (ECF No. 25-11) are procedurally barred and will not be considered on their merits herein.

motions to exclude Applicant's statements and argued that he had invoked his Miranda rights, and that he was heavily into drugs and did not know what he was doing. She was unsuccessful in her efforts. Ms. Thomason was reasonable in her belief that the outcome of these motions and the trial itself would not have been different had she subpoenaed the doctors and medical records from the Greenville County Detention Center.

It is clear from her testimony that Applicant was informed of his constitutional rights, including his right to testify. Applicant made the decision to remain silent. This Court further finds that Applicant was fully apprised of the concept of "hand of one, hand of all". This Court does not find that counsel was ineffective for not sitting in on, or obtaining the transcript from, the co-conspirator's trial. There is no reason to believe that counsel would have gained any information or knowledge of the case that would have been beneficial to her client.

This Court agrees with counsel that the statements provided by various witnesses significantly hurt Applicant. This Court does not find that counsel could have done anything more to keep out the witnesses' statements or Applicant's statements. This Court agrees that the search and seizure was not an issue in this case. Ms. Thomason provided sufficient explanation as to why she did not raise it. Likewise, she provided sufficient explanation as to her trial strategy and the defense she set forth.

Finally, this Court finds that, even if a deficiency could be found in Ms. Thomason's representation, Applicant has failed to carry his burden in showing that counsel's representation prejudiced him such that "but for" her deficiency the outcome of his trial would have been different.

App. 544-45.

Applying the standard of review set out in *Harrington*, *Strickland*,[9] and § 2254, the undersigned is of the opinion that Respondent is entitled to summary judgment as to the portions of Ground One that are being considered on the merits.

---

[9] The undersigned agrees with Respondent (ECF No. 25 at 27-28), that the PCR court appropriately considered Petitioner's claims under *Strickland*, rather than under *United States v. Cronic*, 466 U.S. 648 (1984). *Cf.* Supp. Mem. in Supp. of Pet. for PCR, ECF No. 25-11 (arguing trial counsel's effectiveness should be evaluated pursuant to *Cronic*, which requires a presumption of prejudice as to counsel's performance when counsel did not subject the prosecution's case to "meaningful adversarial testing"). The record demonstrates that trial counsel subjected the State's case to "meaningful adversarial testing," including requiring a *Jackson v. Denno* hearing. The PCR court's application of the *Strickland* standard, rather than that of *Cronic*, in considering Petitioner's claims of counsel ineffectiveness was appropriate and was "not unreasonable" under § 2254(d)(1). In addition, the undersigned notes that in opposing

Respondent argues that the PCR court correctly analyzed Petitioner's assistance of counsel claims and that his finding that Petitioner's trial counsel was not ineffective was not "an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," thereby satisfying the § 2254(d)(2) standard. ECF No. 25 at 27-28. In response, Petitioner argues that it would be "difficult, if not impossible, for any reviewing court to determine 'reasonably' that counsel articulated a sound strategic reason" for not investigating and presenting available medical evidence. ECF No. 41 at 16-18. For example, Petitioner references specific facts and hypothetical expert opinions that he suggests trial counsel could have used in challenging the voluntariness of his statements. He argues that the PCR court's determinations that he was adequately represented by trial counsel were "erroneous and unreasonable." *Id.* at 19.

The undersigned agrees with Respondent. As the PCR court determined, trial counsel was not deficient in her representation of Petitioner under claim 1(a), as counsel's investigation was sufficient based upon her receiving discovery and extensively discussing Petitioner's version of the facts. App. 542-44. Likewise, counsel's representation was not deficient as alleged in 1(b) as the officers questioned in the *Jackson v. Denno* hearing, based upon their experience as law enforcement officers and observers of Petitioner's statement, could clearly offer their opinion as to whether Petitioner was impaired. *See* App. 542-43. Similarly, counsel's representation was not constitutionally defective as alleged in 1(c) because the PCR court found trial counsel's testimony credible and counsel testified that medical records would not have changed the outcome of the motion and ultimately the trial. App. 542-44. The court gives deference to credibility findings by the state court. *Wilson v. Ozmint*, 352 F.3d 847, 858-59 (4th Cir. 2003).

summary judgment, Petitioner references the *Strickland* standard rather than citing *Cronic*. ECF No. 41 at 16, 20.

"[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008).

Petitioner's arguments point to specific evidence or facts he submits could have been raised in the *Jackson v. Denno* hearing or before the jury. This type of conjecture, or arguments about what may have happened if counsel had done things differently do not suffice to demonstrate available relief pursuant to § 2254. *See Josey v. Rushton*, C/A No. 7:00-547-20BG, 2001 WL 34085199 (D.S.C. Mar. 15, 2001) (dismissing petitioner's claims of ineffective representation as being conjectural and speculative) (citing *Bassette v. Thompson*, 915 F.2d 932 (4th Cir. 1990)).

Petitioner has not presented any evidence that shows the PCR court unreasonably applied federal law as established by the Supreme Court or that the PCR court made an unreasonable determination of the facts in light of the evidence before it. As a result, these issues in Ground One are without merit and should be dismissed.

In addition, as referenced above, the court briefly addresses one additional ineffective-assistance-of-counsel issue Petitioner included in his memorandum opposing summary judgment as "Issue 5" under Ground One: "Trial Counsel failed to object to the State Prosecution's burden shifting closing argument based on unrelated elements of kidnapping." ECF No. 41 at 32.[10] The undersigned notes that Petitioner raised that as a ground of counsel's ineffective representation in his initial state court PCR application (App. 314) and his pro se "Supplemental Post Conviction

_____

[10] Petitioner also discusses what he labels as "Issue 6" under Ground One's ineffective assistance claims: "Counsel failed to object to a jury panel that was selected from a contaminated jury pool." "Violation of due process of law." *Id.* at 34. Petitioner notes that this issue regarding how his trial counsel was ineffective is the same as his Ground Three in the instant habeas petition. *Id.* Respondent discusses this issue in relation to Ground Three, arguing it is procedurally barred. ECF No. 20, 21.

Relief Amendment" memorandum (ECF No. 25-4 at 11-15). However, having reviewed the record, the undersigned finds that Petitioner did not specifically include this issue in his federal habeas petition. Nonetheless, Petitioner did attach a list of "Claims and Issues for Relief" that refers to him as "Applicant" and includes as an issue that his trial counsel "[f]ailed to object to trial solicitor's improper, unsupported, false, and burden shifting closing argument concerning an unrelated element of kidnapping." ECF No. 1-1. Although Petitioner does not seem to refer to this one-page attachment anywhere in his federal habeas petition, and he did not properly exhaust it below, the court will consider it on its merits because Respondent did not expressly claim it was barred.[11]

Petitioner argues that he properly presented this issue and points to his pro se brief in support of his PCR application as "formally arguing" the issue. ECF No. 41 at 35 (citing App. 329-33). However, the undersigned finds that Petitioner did not present evidence or argument to the PCR court on this point. Accordingly, he has not satisfied his burden of proving trial counsel's inefficiency on this point. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's conduct during trial was within the wide range of reasonable professional assistance, and the federal court should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner. *Id.* at 688-89. Further, assuming without deciding that the solicitor's reference to kidnapping was improper, in determining whether a solicitor's

---

[11] The undersigned reviews this issue on its merits out of an abundance of caution; however, the court does not intend to imply that Respondent waived the affirmative defense of procedural bar as to this issue. Respondent did not expressly waive the exhaustion requirement as to this or any other issue. *Cf.* 28 U.S.C. § 2254(b)(3) (indicating a respondent will not be deemed to waive exhaustion requirement unless "the State, through counsel, expressly waives the requirement.") Here, Respondent fully discussed all ineffective assistance of counsel issues contained in the only document Petitioner specifically referenced in support of Ground One. *See* ECF 25 at 13-22; *see also* ECF No. 1 at 5 (referencing Supplemental Memorandum in Support of Petition for Post-Conviction Relief, available at ECF No. 25-11).

improper comments should warrant relief, "the relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Petitioner has not met this high standard here. His claim that trial counsel was ineffective for failing to object to the solicitor's use of the word "kidnapping" should be dismissed as a matter of law.

    B.  Grounds Two and Four: The Alleged Violation of Petitioner's Miranda Rights[12]

In Ground Two of his Petition, Petitioner cites to his Supplemental Memorandum for PCR to argue he is entitled for relief because his Miranda rights were allegedly violated when he was questioned on October 24, 2000. ECF No. 1 at 6. The two related claims Petitioner appears to raise are: (1) the trial court's determination that he initiated contact with Greenville County authorities was unreasonable; and (2) the trial court's determination that he was competent for purposes of questioning and rendering statements was unreasonable.[13] *See* App. 127 (trial court's noting these were the two issues to be determined during *Jackson v. Denno* hearing).

---

[12] Respondent notes that Petitioner's Grounds Two and Four both relate to whether Petitioner's Miranda rights were violated based on whether his statements were freely and voluntarily given. *See* ECF No. 25 at 16-17, 30-31; 37-38. In his response, Petitioner acknowledges that "Ground Two is actually meant to be Ground Four." ECF No. 41 at 37. Accordingly, the court considers the merits of Petitioner's Grounds Two and Four together.

[13] In his motion for summary judgment, Respondent characterizes Petitioner's argument as including a claim that the trial court's finding of competence was unreasonable because the trial court did not conduct a competency hearing as contemplated in *South Carolina v. Blair*, 273 S.E. 2d 536 (S.C. 1981). ECF 25 at 31, 34. However, the undersigned finds no such specific argument by Petitioner in the record. To the extent such an argument was presented, the undersigned finds it does not rise to a level of offering habeas relief because the trial judge appropriately considered Petitioner's competence for purposes of questioning (App. 128) and, the record contains a pre-trial report of a psychiatrist and psychologist finding Petitioner competent to stand trial (App. 129-30).

1.      Whether Petitioner was Competent for Purposes of Questioning

The undersigned agrees with Respondent that the trial court's determination that Petitioner was competent when he voluntarily and intelligently waived his rights in talking with law enforcement officials and giving his statements was not unreasonable. Anderson County Investigators Garrett and Major both testified at the *Jackson v. Denno* hearing, and their statements regarding Petitioner's demeanor and the process in general are instructive.

When Investigators Garrett and Major arrived, they gave Petitioner an advice of rights form, and Investigator Garrett asked Petitioner what is level of education was. App. 94-95. Petitioner indicated he was a high school graduate, and Investigator Garrett asked Petitioner to read several lines of the form to ensure he was able to read. App. 95. Petitioner read the portions of the form he was requested to read, and Investigator Garrett then read Petitioner his Miranda rights and the waiver of rights form. App. 95-96. Petitioner signed both documents indicating that he understood his rights and chose to waive those rights. App. 96. After receiving his Miranda rights and waiving those rights, Petitioner issued an oral statement confessing to his role in Simmons' murder. App. 100. Investigators Garrett and Major then generated a written version of Petitioner's oral statement, which was read back to Petitioner. Petitioner reviewed the written statement, made some slight changes, and signed the statement. App. 99-100. At the hearing, Investigators Garrett and Major both indicated Petitioner did not appear to be under the influence of drugs or alcohol. App. 97-98, 103-04.

The trial court found that, "looking at the totality of the circumstances involved," the oral and written statements "were freely and voluntarily given without duress, without coercion, without undue influence, without reward, without promise or hope of reward, without promise or leniency or threat of injury and without compulsion or inducement of any kind; and that such

alleged statement is the voluntary product of free will and unconstrained will of the defendant."
App. 128. The court continued: "I further find factually that any medical effect from the
Phenobarbitol has not been proven by the defendant in affecting voluntariness of the statement.
And, I find that [] both statements oral and written, are admissible in evidence. And, I will
charge the jury the appropriateness as to their findings of voluntariness beyond a reasonable
doubt at the appropriate time." App. 128.

The undersigned finds the trial court's determination that Petitioner knowingly and
voluntarily waived his rights and gave statements to law enforcement was not unreasonable
under § 2254(d).

2.      Whether Petitioner Initiated Contact with Law Enforcement

Petitioner provided his statements to investigators on October 24, 2000. The previous
day, Petitioner indicated he did not wish to continue discussing matters with law enforcement
until he consulted with counsel. It is undisputed that officials discontinued their interview of
Petitioner at that time. App. 72-75. As noted at the beginning of the *Jackson v. Denno* hearing,
one of the main issues the trial court had to decide was whether Petitioner re-initiated contact
with law enforcement officials when he met with them and gave his statements. App. 74.

After hearing testimony from Plaintiff and from Investigators Robby Johnson, Garrett,
and Major and argument of counsel, the trial court found the following regarding who initiated
the contact on October 24:

> I'm going to find factually that I believe Detective Robby Johnson's testimony
> whereby he states unequivocally that the defendant said he wanted to talk. And, I
> think he said "I wanted to talk about something bad that happened." And, I reject
> the defendant's statement primarily because he said, "as far as I can remember."
> He never really positively said the detective initiated the statement. As far as
> direct or cross; and I find as a factual matter that I believe Detective Robby
> Johnson; that the further contact was initiated by the defendant, Daniel Eugene
> Sherman.

App. 128.

The undersigned finds that the trial court was not unreasonable in determining that Petitioner re-initiated contact with a law enforcement official following his initial invocation of his right to counsel the previous day.

As Greenville County Sheriff's Office Investigator Robby Johnson testified, he reviewed the jail roster to see if there were any active warrants against any of the new detainees at the detention center. App. 86. As explained to the trial court, after seeing Petitioner's name on the roster, Johnson went to the detention center, so Petitioner could be arraigned on unrelated active warrants. App. 79, 81. While transporting Petitioner for arraignment, Petitioner asked Johnson whether he knew what was going on, to which Johnson responded, "not much." App. 81. Petitioner then said, "I really need to talk to somebody about this." App. 81. In response, Johnson stated, "about what" and Petitioner replied that he needed to "talk about Tommy." App. 92-93. Johnson then informed Petitioner, "I can arrange that" and subsequently took Petitioner to meet with Greenville County authorities in the violent crime section. App. 81.

Investigators Garrett and Majors also testified at the hearing, as set out above.

Petitioner testified at the hearing that he had not initiated contact with Investigator Johnson, instead claiming that Johnson initiated the conversation. App. 109-12. On cross-examination, though, Petitioner told the trial court he was not positive whether Johnson initiated the conversation. App. 115.

The undersigned finds that the trial court's determination that Johnson's testimony that Petitioner had initiated the October 24, 2000 conversation was credible and that Petitioner's testimony was not credible was not unreasonable under § 2254(d). Respondent's motion for summary judgment should be granted as to Petitioner's Grounds Two and Four.

III.     Conclusion

The undersigned has considered each of Petitioner's grounds for habeas corpus relief and recommends that each be dismissed. Accordingly, for the foregoing reasons, the court recommends that Respondent's motion for summary judgment (ECF No. 24) be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


February 22, 2012                                  Kaymani D. West
Florence, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**